# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>JOHN BEN JONES, JR.,<br><br>Appellant. | No. 46243-5-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — John Ben Jones Jr. appeals his conviction, arguing the evidence was insufficient to support a conviction for second degree murder. The unchallenged findings of fact support the trial court's conclusion that Jones was guilty of second degree murder. Therefore, we affirm.

FACTS

Jones lived with his mother, Esther Jordan; his brother, Andrew Jordan; his uncle, Daniel Jordan; and Esther's boyfriend, William Calvert.[1] Jones and Wayne Williams were friends, and Williams regularly stayed at Esther's home, sleeping in Jones' bedroom. Jones was unemployed and typically spent his time in his bedroom.

On Monday, March 19, 2012, Esther brought Jones and Williams dinner in Jones' bedroom. Andrew heard loud voices over the loud music playing in Jones' bedroom. Andrew also heard someone say "f*** you " in Jones' room, as well as the sound of something falling. 8

---

[1] Jones' family members share a last name. This opinion will refer to their first names to avoid confusion; no disrespect is intended.

Verbatim Report of Proceedings (VRP) at 1089; Clerk's Papers (CP) at 481. No one testified to seeing Williams after Monday evening.

On Tuesday, March 20, Jones told Esther and Calvert that he had kicked Williams out of the home, which caused an argument, and Williams had told Jones to "f*** off." CP at 481. Jones spent Tuesday, March 20 at home in his bedroom. Esther, Andrew, and Calvert were gone most of the day. Daniel may have been home, but was uncertain. Jones left his bedroom at 6 or 7 p.m. and spend most of the evening watching television downstairs. Jones slept downstairs on the couch instead of his bedroom. Jones usually slept in his bedroom and it was unusual for him to sleep downstairs. Between Monday evening, March 19, and before Tuesday evening, March 20, no one was seen coming from or going to or inside Jones' room, other than Jones.

On Wednesday morning, March 21, Esther discovered Williams' body in Jones' bedroom. Daniel was clear that no one should touch or disturb Jones' room, and they called the police. When police officers arrived, they found Williams' body. The body had substantial injuries and was dismembered. The police also found a cross-cut style handsaw laying across Williams' waist, and gardening sheers, a Leatherman tool, two screwdrivers, and two knives near Williams' body.

Police detectives questioned Jones. During questioning, Jones told detectives: "No good can come from telling the truth." CP at 443.

Following an investigation, the State charged Jones with first degree murder with a deadly weapon enhancement. Jones waived his right to a jury trial and proceeded to a bench trial.

The medical examiner determined that Williams died between Monday evening, March 19, and before Tuesday evening, March 20. The medical examiner classified Williams' death as a homicide and determined that Williams' death was caused by manual strangulation. The medical

examiner also testified that in addition to being strangled, Williams suffered antemortem injuries on his hands. Williams also suffered stab wounds to his head from a screwdriver, stab wounds to his abdomen from a knife, sharp force injuries to his arms and head, and blunt force injuries to his head. The medical examiner did not have an opinion as to whether those injuries occurred antemortem or postmortem. Williams was also dismembered, which the medical examiner testified occurred postmortem.

The State's forensic scientist performed DNA (deoxyribonucleic acid) testing on a blood stain found on a glove found in Jones' room and on the jean pants Jones wore on Tuesday. The forensic scientist testified that the glove and jeans contained both Jones' and Williams' DNA. The trial court found that Williams was killed in Jones' bedroom, and not at a different location and then moved to Jones' bedroom.

The trial court found Jones not guilty of first degree murder, because the "element of premeditation was not proved beyond a reasonable doubt." CP at 487. However, the trial court found Jones guilty of second degree murder, a lesser included offense of the charged first degree murder. The trial court also found that Jones "during the period between and including the 19th day of March, 2012, and the 20th day of March, 2012, acted with the intent to cause the death of Wayne Williams and did cause the death of Wayne Williams, a human being, by strangulation." CP at 486. The trial court filed a written decision of the court and entered findings of facts and conclusions of law, which incorporated its previously filed written decision. Jones appeals his conviction.

ANALYSIS

Jones argues that the State's evidence was insufficient to sustain a conviction for second degree murder. Jones challenges portions of the trial court's findings of fact 7, 11, 12 and 13, and the trial court's conclusion of law 3. Because Jones fails to demonstrate that the trial court's findings of fact are unsupported by substantial evidence or that the trial court's conclusion of law is not supported by the findings, we affirm.

A.    LEGAL STANDARD

"To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). "Specifically, following a bench trial, [our] review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *Id.* at 105-06. Evidence is substantial if it is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise. *Id.* at 106. "The party challenging a finding of fact bears the burden of demonstrating the finding is not supported by substantial evidence." *State v. Vickers*, 148 Wn.2d 91, 116, 59 P.3d 58 (2002) (quoting *Nordstrom Credit Inc. v. Dep't of Revenue*, 120 Wn.2d 935, 939-40, 845 P.2d 1331 (1993)). Unchallenged findings of fact are verities on appeal. *Homan*, 181 Wn.2d at 106. We review the trial court's conclusions de novo. *Id.*

"In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *Id*. These inferences are "'drawn in favor of the State and interpreted most strongly against the defendant.'" *Id*. (quoting

*State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).  Further, we defer to the "trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence."  *Id*.

B.      TRIAL COURT'S FINDINGS OF FACT

Jones assigns error to portions of finding of fact 7 and 11.  We hold that substantial evidence supports the trial court's findings.[2]

1.   Finding of Fact 7

The portion of finding of fact number 7 that Jones assigns error to reads: "The autopsy conclusively established that Mr. Williams had been intentionally killed by manual strangulation." Br. of Appellant at 1 (quoting CP at 481).  This portion of finding number 7 is supported by substantial evidence.

The medical examiner classified Williams' death as a homicide.  The medical examiner testified that Williams' death was caused by manual strangulation.  The medical examiner also testified that based on Williams' injuries, he came to "the reasonably certain conclusion that manual strangulation occurred.  There isn't anything else in this autopsy that can be reasonably

---

[2] Jones also assigns error to finding of fact 12 and 13, but does not offer argument regarding findings numbers 12 or 13.  Therefore, we do not address those assignments of error.  RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Furthermore, Jones' appears to concede his argument that finding of fact number 12 is unsupported.  Finding of fact number 12 provides: "The gloves also were conclusively found to contain DNA from both [Jones] and Mr. Williams."  CP at 483.  Jones argues that "the whole of the State's evidence to prove [he] intentionally killed Wayne Williams consisted of the following: . . . there were small blood stains which purportedly contained the DNA profile of Mr. Williams on a glove and a pair of blue jeans, and both of which contained a DNA profile consistent with Mr. Jones."  Br. of Appellant at 13.

fingered to have caused the death." 6 VRP at 864. Therefore, the trial court's finding that the autopsy established that Williams was "intentionally killed by manual strangulation" is supported by the medical examiner's testimony that Williams' death was intentionally caused, through manual strangulation. CP at 481

Jones argues that finding number 7 is unsupported by substantial evidence because the "medical examiner testified that manual strangulation was the most likely cause of death" but that "he would not state it with absolute certainty, as strangulation is not necessarily fatal." Br. of Appellant at 16. Jones appears to suggest that the trial court erred by finding that Williams' death was caused by manual strangulation because the medical examiner would not testify that manual strangulation was the cause of death with "absolute certainty." Br. of Appellant at 16.

To the extent that Jones' claim is related to the trial court's use of "conclusively," this claim fails. Jones fails to provide argument or authority regarding his interpretation of "conclusively" and how it renders the trial court's finding unsupported. To the extent that Jones asks us to evaluate the evidence or credibility of the medical examiner's testimony, we decline to do so because we defer to the trier of fact regarding weight or credibility of the evidence. *Homan*, 181 Wn.2d at 106.

Jones also argues that the trial court's finding lacks sufficient evidence, in part because "there was no showing of intentionality." Br. of Appellant at 16. In support of his argument, Jones cites *State v. Bingham*, 105 Wn.2d 820, 719 P.2d 109 (1986).

Jones' assertions and reliance on *Bingham* are misplaced. *Bingham* held that manual strangulation *alone* is insufficient evidence to support a finding of premeditation where no evidence was presented of deliberation or reflection before or during the strangulation. 105 Wn.2d

at 827-28. However, the Bingham court did affirm a conviction for second degree murder based on evidence of manual strangulation. *Id.* at 821, 828. Jones conflates premeditation with intent. Jones makes no argument and provides no authority to support his assertion that manual strangulation cannot be evidence of intent.

The trial court's finding of fact 7 is supported by substantial evidence. Therefore, Jones' challenge to this finding fails.

### 2. Finding of Fact 11

Jones assigns error to a portion of finding of fact number 11, which reads: "On Tuesday, March 20, 2012, in the late afternoon or early evening [Jones] was not in of [sic] his room. By that time the body of Mr. Williams had been substantially dismembered and packaged." Br. of Appellant at 1 (quoting CP at 483). Jones argues that the trial court's finding that the body had been substantially dismembered is in error because three eyewitnesses "testified the head had not been removed at the time they viewed the body." Br. of Appellant at 15. We disagree.

On Wednesday, March 21, police found Williams' dismembered, with his legs, arm, and head in different bags. Regardless of whether Williams' head was attached, the body was substantially dismembered. Thus, Jones' argument fails because he fails to demonstrate that the trial court's finding is not supported by substantial evidence.

## C. TRIAL COURT'S CONCLUSION OF LAW 3

Jones argues that the trial court's conclusion that he is guilty of second degree murder is unsupported by the trial court's factual findings. Specifically, Jones challenges the portion of conclusion of law 3 that states: "The defendant is guilty of the crime of Murder in the Second Degree." Br. of Appellant at 2 (quoting CP at 487). Jones' challenge fails.

The trial court's conclusion is supported by the unchallenged findings. Specifically, the trial court found the following facts, which have not been challenged and, therefore, are verities on appeal. *Homan*, 181 Wn.2d at 106.

Williams began living in Jones' bedroom several months before his death. Williams was last seen alive on Monday evening, March 19, by Jones' mother, Esther Jordan. Williams died between Monday evening, March 19, and before Tuesday evening, March 20. During this time, no one was seen coming from or going to or inside Jones' room other than Jones. Williams was not killed at a different location, with his body later deposited in Jones' bedroom.

Jones told detectives he had gotten into an argument with Williams on Monday, March 19. Jones explained that the argument happened when he told Williams he had to leave the home. Williams told Jones to "f*** off." CP at 435, 481. Andrew heard someone saying "f*** you" from outside his bedroom. CP at 481. Jones told his mother and Calvert about the argument and what Williams said the next day, Tuesday, March 20.

Jones spent Tuesday in his bedroom, which was how he customarily spent nearly all of his time. Jones left his bedroom at 6 or 7 p.m. and spend most of the evening watching television. Jones fell asleep on downstairs on the couch, which was unusual. Jones was still asleep on the couch when his mother woke him up Wednesday morning after she discovered Williams' body. Dr. Clark listed the cause of death as manual strangulation and the manner of death as homicide.

Jones made various statements to the police. The trial court found that Jones' "statement at the end of the police interview, that no good could come of telling the truth, was credible but showed guilty knowledge of the crime." CP at 485. Finally, that Jones "during the period between and including the 19th day of March, 2012, and the 20th day of March, 2012, acted with the intent

to cause the death of Wayne Williams and did cause the death of Wayne Williams, a human being, by strangulation." CP at 486.

The trial court's conclusion is supported by its unchallenged findings of facts, which are verities on appeal. *Homan*, 181 Wn.2d at 106. Therefore, Jones' challenge to the trial court's conclusion 3 fails.

Jones has failed to demonstrate that the trial court's findings of fact do not support its conclusions of law. The unchallenged findings of fact support the trial court's conclusions of law. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, P.J.

Sutton, J.